UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNIQUE BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 21-2701-SHM-tmp |
| | ) | |
| C. BLAIR, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

ORDER MODIFYING THE DOCKET;
PARTIALLY DISMISSING THE COMPLAINT (ECF NO. 1) WITHOUT PREJUDICE;
GRANTING LEAVE TO AMEND THE COMPLAINT'S CLAIMS THAT ARE
DISMISSED WITHOUT PREJUDICE;
AND PROCEEDING THE COMPLAINT'S EXCESSIVE FORCE CLAIM AGAINST
DEFENDANTS BLAIR AND SMITH IN THEIR INDIVIDUAL CAPACITIES

---

On November 8, 2021, Plaintiff Unique Brooks filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*.  (ECF Nos. 1 & 2.)  Brooks was incarcerated at the Shelby County Criminal Justice Center (the "SCCJC") in Memphis, Tennessee when Brooks filed the complaint.  (ECF No. 1-1 a PageID 8.)  On November 9, 2021, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act, 28 U.S.C. §§ 1915, *et seq*. (the "PLRA").  (ECF No. 4.)

The complaint asserts claims of: (1) excessive force; (2) deprivation of medical care and mental health care; (3) denial of access to the courts; (4) transfer to another correctional facility; (5) verbal harassment; (6) unconstitutional conditions of confinement; (7) retaliation; and (8) failure to protect.  (ECF No. 1 at PageID 3-5.)  Brooks sues four Defendants: (1) SCCJC Correctional Officer C. Blair; (2) SCCJC Correctional Officer T. Smith; (3) SCCJC Correctional Officer T. Lowery; and (4) the Shelby County Division of Corrections (the "SCDC").  (*Id*. at

PageID 1-2.)  Brooks sues Blair, Smith, and Lowery in their official capacities and individual capacities.  (*Id*. at PageID 2.)  Brooks seeks: (1) injunctive relief to prohibit the Defendants "from threatening or using excessive force, sexually assaulting and intimidation" (*id*. at PageID 7); (2) one million dollars ($1,000,000.00) in damages (*id*.); and (3) transfer to a different correctional facility.  (*Id*.)

The Clerk is directed to modify the docket to add Defendants: (1) Shelby County, Tennessee; (2) SCCJC Nurse (the "Nurse"); and (3) Ms. Holiday of the SCCJC's Mental Health Department.

The complaint (ECF No. 1) is before the Court.

For the reasons explained below: (1) the complaint (ECF No. 1) is PARTIALLY DISMISSED WITHOUT PREJUDICE; (2) leave to amend the claims dismissed without prejudice is GRANTED; and (3) Brooks's excessive force claim against Blair and Smith in their individual capacities SHALL PROCEED.

## I.   <u>LEGAL STANDARD</u>

The Court must screen prisoner complaints and dismiss any complaint, or any portion of it, if the complaint —

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 .S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).  Under those standards, the Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th

Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681).  The Court does not assume that conclusory allegations are true, because they are not "factual," and all legal conclusions in a complaint "must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.  Federal Rule of Civil Procedure 8 provides guidance on this issue.  Although Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," it also requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

Courts screening cases accord more deference to *pro se* complaints than to those drafted by lawyers.  "*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed."  *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).  *Pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure.  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

## II.   REQUIREMENTS TO STATE A CLAIM UNDER § 1983

Brooks sues under 42 U.S.C. § 1983.  (ECF No. 1 at PageID 1.)  To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States, and (2) that a defendant caused harm while acting under color of state law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

## III.   ANALYSIS

### A.   Claim Against The SCDC And Shelby County; Official Capacity Claims

The Court construes Brooks's claims against the SCDC, *see* ECF No. 1 at PageID 1-2, as claims against Shelby County because governmental departments and divisions are not suable entities. *See generally Hafer v. Melo,* 502 U.S. 21 (1991).

To the extent Brooks sues Blair, Smith, Lowery, the Nurse, and Ms. Holiday in their official capacities[1], those claims are construed as claims against those Defendants' employer, Shelby County. *See Jones v. Union Cnty., Tenn*., 296 F.3d 417, 421 (6th Cir. 2002) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)).

Shelby County may be held liable only if Brooks's alleged injuries were sustained pursuant to an unconstitutional custom or policy. *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691-92 (1978). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)).

Brooks does not allege that he has been deprived of a right because of a Shelby County policy or custom. Instead, Brooks alleges violations of his constitutional rights in the particular circumstances of his confinement at the SCCJC, as described in the complaint. (ECF No. 1 at PageID 2-4.) Brooks's claims against (1) the SCDC, (2) Shelby County, and (3) Blair, Smith,

---

[1] Brooks expressly alleges official and individual capacity claims against Blair, Smith, and Lowery. (*See* ECF No. 1 at PageID 1-2.) Because the Court construes the complaint liberally to allege claims against the Nurse and Ms. Holiday, the Court construes Brooks's allegations about them to allege official and individual capacity claims. The plausible inference from the record supports that conclusion.

Lowery, the Nurse, and Ms. Holiday in their official capacities are DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

### B.  Claim Of Excessive Force Against Blair And Smith In Their Individual Capacities

Brooks alleges that when he asked for a cell transfer on September 25, 2021, "due to [Brooks's] mental health" and "fear for [Brooks's] safety," Officer Lowery directed Officer Blair to strip search Brooks.  (ECF No. 1 at PageID 3.)  Blair escorted Brooks to the bathroom and instructed Brooks to remove his clothing.  (*Id*.)  When Brooks complied, Blair "laughed at [Brooks] and made remarks about [Brooks's] body."  (*Id*.)  Blair next instructed Brooks to get dressed and exit the bathroom.  When Brooks complied, Smith handcuffed Brooks, and Blair told Brooks to remove his shoes.  (*Id*.)  When "one of [Brooks's] shoes accidentally touched Officer Blair's boot," Blair punched Brooks's eye.  (*Id*.)  Smith "slammed [Brooks] onto the window," while Lowery and Smith used racial slurs to Brooks.  (*Id*.)  Smith escorted Brooks to the SCCJC's medical office, where Brooks refused to sit handcuffed on a chair "because [Brooks's] circulation was being cut off."  (*Id*.)  Smith "slammed [Brooks] to the ground." (*Id*.)  The Nurse "declined medical attention on the grounds [that Brooks was] being combative."  (*Id*. (the September 25, 2021 events are collectively referred to as the "Incident").)  Brooks does not describe what, if any, injuries he received during the Incident.

The Court construes Brooks's allegations as a claim of excessive force.

The Eighth Amendment protects a convicted inmate from cruel and unusual punishments, including "the unnecessary and wanton infliction of pain." *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *Wilson v. Seiter*, 501 U.S. 294 (1991).  The Eighth Amendment's subjective standard takes into account a defendant's state of mind.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Establishing an Eighth Amendment claim of excessive force requires an inmate's showing that (1) "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," and (2) "'the officials act[ed] with a

sufficiently culpable state of mind.'" *Hudson*, 503 U.S. at 8 (quoting *Wilson*, 501 U.S. at 298, 303). The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 6 (citing *Whitley*, 475 U.S. at 320- 21).

Pretrial detainees' protection against excessive force is provided by the Fourteenth Amendment's Due Process Clause, which protects a pretrial detainee in state custody against the use of excessive force that amounts to punishment. *Leary v. Livingston Cnty*., 528 F.3d 438, 443 (6th Cir. 2008) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989)). Pretrial detainees' excessive force claims are analyzed under the Fourteenth Amendment's standard of objective reasonableness, which "turns on the 'facts and circumstances of each particular case.'" *See Kingsley v. Hendrickson*, 76 U.S. 389, 396-97, 135 S. Ct. 2466, 2472- 73, 192 L.Ed.2d 416 (2015) (rejecting a subjective standard that takes into account a defendant's state of mind in pretrial detainee cases) (quoting *Graham*, 490 U.S. at 396). The Court must judge the reasonableness of a particular use of force "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id*. Under an objective reasonableness inquiry, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (citations omitted). The proper application of this standard requires consideration of the following factors: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *Kingsley*, 135 S. Ct. at 2473. This list is not exhaustive but illustrates some of the "objective circumstances potentially relevant to a determination of excessive force." *Id*.

The record is silent about whether Brooks was a pretrial detainee or a convicted prisoner at the time of the Incident. Even under the more exacting test of the Eighth Amendment's subjective standard, Brooks sufficiently alleges a claim of excessive force against Blair and Smith in their individual capacities.

After Brooks complied with Blair's instructions during the strip search, Blair allegedly punched Brooks's eye and Smith allegedly slammed Brooks into a window. The Defendants allegedly used that force because Brooks's shoe accidentally touched Blair's boot when the handcuffed Brooks removed the shoe with his feet. (ECF No. 1 at PageID 3.) When Brooks refused to sit because his handcuffs constrained his blood circulation, Smith slammed Brooks to the ground. (*Id*.) Nothing in the record suggests that Brooks posed a threat to Blair, Smith, other SCCJC personnel or other inmates at the time of the Incident. Brooks allegedly required medical attention because of the Incident. (*Id*.) These factual allegations afford a plausible inference that Smith's and Blair's punching and slamming of Brooks were objectively unreasonable and were harmful enough, in light of the Incident's facts and circumstances, to demonstrate a constitutional violation. *See Hudson*, 503 U.S. at 8; *Graham*, 490 U.S. at 397.

The complaint alleges facts about Blair's and Smith's states of mind that underscore this conclusion. Blair's remarks about Brooks's body during the strip search "frightened" Brooks. (ECF No. 1 at PageID 3.) Blair "immediately rushed toward" Brooks and punched Brooks in the eye when Brooks's shoe accidentally touched Blair's boot. Under the facts alleged in the complaint, Brooks did not intend to touch Blair's shoe when Brooks complied with commands to remove his shoes. Brooks fumbled to remove his shoes with his feet because he was handcuffed. (*Id*.) These allegations suggest Blair and Smith harbored malicious intent as retribution for Brooks's cell transfer request. (*See id*.) At the time of the Incident, Brooks was handcuffed and not a threat to anyone. Blair's and Smith's use of force was not a good-faith effort to restore order.

For these reasons, Brooks alleges sufficient facts demonstrating Blair and Smith used objectively harmful excessive force and acted with a sufficiently culpable state of mind during the Incident.  *See Hudson*, 503 U.S. at 8; *Graham*, 490 U.S. at 397.  Brooks's excessive force claims against Blair and Smith in their individual capacities SHALL PROCEED.

C.  **Claim Of Denial Of Medical Care**

1.  **Brooks's Post-Incident Medical Care**

Brooks alleges the Nurse "declined [Brooks] medical attention [after the Incident] on the grounds of [Brooks] being combative."  (ECF No. 1 at PageID 4.)  Brooks does not identify injuries for which he allegedly required medical attention.

Brooks's allegation that he was denied medical treatment after the Incident is construed as an Eighth Amendment claim of deliberate indifference.  The objective component of an Eighth Amendment deprivation-of-medical-care claim requires that a prisoner have a serious medical need.  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994).  "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'"  *Blackmore*, 390 F.3d at 897.  The subjective component requires that jail officials acted with the requisite intent -- *i.e.*, -- had a "sufficiently culpable state of mind."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Wilson*, 501 U.S. at 302-03 (plaintiffs must show that prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm).[2]

---

[2]  It is unclear from the record whether Brooks was a pre-trial detainee or a convicted inmate at the time of the alleged deprivation of his post-Incident medical care.  If Brooks was a detainee at that time, the Eighth Amendment's protections apply to him under the provisions of the Fourteenth Amendment.  *See Winkler v. Madison Cnty.*, 893 F.3d 877, 890-91 (6th Cir. 2018).

Brooks alleges only generally that he needed "medical attention" after the Incident.  (ECF No. 1 at PageID 4.)  Brooks does not satisfy the objective prong of his deprivation-of-medical-care claim because Brooks does not allege facts demonstrating a sufficiently serious medical need.  Brooks does not satisfy the subjective prong of his deprivation-of-medical-care claim because Brooks does not allege facts demonstrating Lowery, Blair, Smith, or the Nurse subjectively knew of, but disregarded, Brooks's alleged need for medical attention.  Brooks's claim of denial of medical care against Lowery, Blair, Smith, and the Nurse is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

### 2.  Brooks's Mental Health Care In September 2021

Brooks alleges he was placed on suicide watch during September 25-28, 2021.  (ECF No. 1 at PageID 4.)  A "mental health doctor" did not speak with Brooks.  (*Id*.)  Ms. Holiday, who met with Brooks via webcam, (1) "never listened to" Brooks's vaguely-alleged "concerns," (2) spoke about Brooks's mental health in front of an unnamed corrections officer, and (3) "told [Brooks] to leave and sleep on the floor [in Cell Eight] to think about what [Brooks] did."  (*Id*.)  Brooks's confinement in Cell Eight "hurt [Brooks's] neck and back."  (*Id*.)

Failure to provide medical care, including mental health care, may give rise to a constitutional violation.  *See*, *e.g.*, *Dulworth v. Lindamood*, No. 18-cv-0036, 2018 WL 4467038, at *3 (M.D. Tenn. Sept. 18, 2018) (internal citations omitted).  Under federal law, mental-health needs are medical needs for purposes of the Eighth Amendment's deliberate-indifference analysis.  *See Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2001) (citation omitted).  A plaintiff satisfies the objective component by alleging that he had a medical need that was "sufficiently serious."  *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014) (quoting *Farmer*, 511 U.S. at 834).  A plaintiff satisfies the subjective component "by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that

he then disregarded that risk." *Id.* The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* A prisoner's difference of opinion regarding treatment does not rise to the level of an Eighth Amendment violation. *Estelle*, 429 U.S. at 107.

For purposes of screening under the PLRA, the Court construes Brooks's placement on "suicide watch" as a sufficiently serious medical need. *See* ECF No. 1 at PageID 4; *Comstock*, 273 F.3d at 711 (suicidal thoughts may be a serious condition); *Christy v. Lindamood*, No. 18-cv-0008, 2018 WL 1907447, at *5 (M. D. Tenn. Apr. 23, 2018). Brooks acknowledges that he received some mental health care from Ms. Holiday. (ECF No. 1 at PageID 4 (Brooks had a webcam visit with Ms. Holiday).) Brooks's allegations about the inadequacy of Ms. Holiday's care reflect a difference of opinion about treatment, which does not rise to the level of an Eighth Amendment violation. *Westlake*, 537 F.3d at 860 n.5.

As to Ms. Holiday's state of mind, the complaint does not allege facts demonstrating that (1) Ms. Holiday subjectively perceived facts from which to infer a substantial risk of harm to Brooks, (2) Ms. Holiday did in fact draw the inference, and (3) Ms. Holiday then disregarded that risk. *See Christy*, 2018 WL 1907447, at *5. Although telling an individual with mental health problems that he needs to be "t[aught] a lesson" may be harsh, *see* ECF No. 1 at PageID 4, Brooks's allegations, standing alone, are insufficient to afford a plausible inference that Ms. Holiday and SCCJC medical "staff" were deliberately indifferent to Brook's mental health care needs. *See Morgan v. Hiwassee Mental Health*, No. 19-cv-22, 2019 WL 3719391, at *3 (E.D. Tenn. Aug. 7, 2019); ECF No. 1 at PageID 4. Brooks does not allege facts from which the Court

can plausibly infer that Ms. Holiday deliberately deprived Brooks of mental health treatment. *See Rouster*, 749 F.3d at 449 (finding no deliberate indifference to inmate's mental health needs where he was placed in an "observation cell where he could be closely monitored").

Brooks's Eighth Amendment claim of denial of medical care against Ms. Holiday in her individual capacity is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

### D. Claim Of Denial Of Access To The Courts

Brooks alleges that mail addressed to him arrived at the SCCJC on September 28, 2021, but Brooks "never received [his] legal documents." (ECF No. 1 at PageID 5 (alleging Brooks "was supposed to receive legal mail, notifying [Brooks] of [his] scheduled court date and [Brooks's] discovery documents in [Brooks's] case" (the "Mail")).) At a hearing on October 7, 2021, in Brooks's criminal case (the "October Hearing"), Brooks allegedly "could not object to any parts of the pleading" because he was "unaware of important information in the discovery documents." (*Id.* (alleging Brooks's "court date was set, excluding my speedy trial time").) Brooks alleges also that he was "denied access to courts" because he was deprived of "paper, pens, or envelopes" on unspecified dates. (*Id.*) Brooks does not describe particularly the Mail's contents, he does not identify what allegedly "important information" was in the Mail, and he does not allege what arguments he was unable to present at the October Hearing because he did not receive the Mail. Brooks does not identify particularly the Defendants who allegedly denied his access to the courts.

The Court liberally construes these allegations as a claim of denial of access to the courts.

Prisoners retain a constitutional right of access to the courts, *see Bounds v. Smith*, 430 U.S. 817, 821-22 (1977) (citing *Ex Parte Hull*, 312 U.S. 546 (1941)), which "extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Prison authorities must "provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. To

have standing to pursue a First Amendment claim for denial of access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' *i.e.*, that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see Thaddeus-X*, 175 F.3d at 394.

Brooks does not allege that he was unable to pursue a nonfrivolous legal claim because the Mail was not delivered to him before the October Hearing. (*See* ECF No. 1 at PageID 5.) Brooks neither identifies the arguments for which he supposedly needed the Mail nor demonstrates that those arguments are nonfrivolous. Brooks's First Amendment claim of denial of access to the courts is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

### E.  Claim For Transfer To A Different Prison

Brooks seeks transfer to "another facility while [this] civil action is pending to ensure my health and safety." (ECF No. 1 at PageID 7.) Brooks does not allege facts demonstrating that persons or conditions at the SCCJC are compromising Brooks's health and safety while this case is pending.

"[A] federal court only has the authority to order a state to transfer a prisoner in the rare and extreme situation where an inmate's life is in imminent or grave danger." *Neal v. Woosley*, No. 4:20-cv-P167-JHM, 2020 WL 7327313, at *4 (W.D. Ky. Dec. 11, 2020). Brooks's bare allegation that there is risk to him of "excessive force, sexual[] assault[], and intimidation" by the Defendants if Brooks remains at the SCCJC during the pendency of the case, *see* ECF No. 1 at PageID 7, does not allege facts supporting Brooks's conclusory allegation about imminent danger.

Brooks's claim for transfer to a correctional facility is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief because Brooks does not allege facts demonstrating risk of grave danger that would permit the Court to order Brooks's transfer to a different facility.

**F.** **Verbal Harassment Claim Against Blair, Lowery, And Smith In Their Individual Capacities**

Blair "laughed at [Brooks] and made remarks about [Brooks's] body" during the Incident. (ECF No. 1 at PageID 3.)  Lowery and Smith used racial slurs to Brooks during the Incident.  (*Id.*)

To the extent Brooks alleges a claim of verbal harassment by Blair, Lowery, and Smith, Brooks's claim fails as a matter of law.  It is well settled that verbal abuse or harassment at the hands of prison officials does not constitute a violation of the Eight Amendment.  *See*, *e.g.*, *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that even harassment that constitutes "shameful and utterly unprofessional behavior" is insufficient to constitute cruel and unusual punishment); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) ("Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment."); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (holding that an officer's "reprehensible" action of offering sexual favors to the plaintiff-inmate did "not rise to the level of a constitutional violation").

Brooks's verbal harassment claim against Blair, Lowery, and Smith is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

**G.** **Unconstitutional Conditions Of Confinement Claim Against Ms. Holiday In Her Individual Capacity**

Brooks alleges that Cell Eight, to which Ms. Holiday sent Brooks after his mental health webcam appointment, was "unsanitized," "extremely cold," and "in the same unit [with] … inmates with positive Covid-19 test[s]."  (ECF No. 1 at PageID 4.)  While confined in Cell Eight, Brooks had no mattress, received cold food, found hair follicles in his food and water, and had a "smock that did not fasten so [Brooks] was nude" (collectively, the "Alleged Conditions").  (*Id.*)  The Court construes Brooks's allegations as an unconstitutional-conditions-of-confinement claim against Ms. Holiday in her individual capacity.

The Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *See generally Wilson*, 501 U.S. at 296. Prison officials must provide inmates with humane conditions of confinement. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Eighth Amendment imposes a duty to "ensure that inmates receive adequate food, clothing, shelter, and medical care" and to protect prisoners from substantial risks to their safety. *Farmer*, 511 U.S. at 832 & 844. An Eighth Amendment claim "requires 'more than ordinary lack of due care for the prisoner's interest or safety.'" *Id*. at 835 (quoting *Whitley*, 475 U.S. at 319). "Extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson*, 503 U.S. at 9. "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* (internal quotations and citations omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

The Sixth Circuit has further explained:

> In certain extreme circumstances, the totality itself may amount to an [E]ighth [A]mendment violation, but there still must exist a specific condition on which to base the [E]ighth [A]mendment claim. We believe such conditions considered alone or in combination [with other conditions], must amount to a deprivation of life's necessities, before a violation of the [E]ighth [A]mendment can be found ... [A] specific deprivation of one or more identifiable human needs must be established in order to prove an Eighth Amendment violation, [and] the plaintiff must show "a culpable state of mind on the part of [the defendant] prison officials.

*Berryman v. Johnson*, No. 88-1239 & 88-1280, 1991 WL 150808, at *9–10 (6th Cir. Aug. 6, 1991) (internal quotations and citations omitted); *see also Walker v. Mintzes*, 771 F.2d 920, 925 (6th Cir. 1985). Eighth Amendment claims based on prison conditions "have both an objective component (denial of ... 'the minimal civilized measure of life's necessities'), and a subjective

component ('deliberate indifference')." *Berryman*, 1991 WL 150808, at *10 (internal citations omitted); *see also Farmer*, 511 U.S. at 834.

The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8–9; *Wilson*, 501 U.S. at 928. A prisoner must allege that: (1) he "is incarcerated under conditions posing a substantial risk of serious harm," *id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005); or (2) the defendant deprived him of the "minimal civilized measure of life's necessities." *Wilson*, 501 U.S. at 298 (quoting *Rhodes*, 452 U.S. at 347); *see also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004).

The subjective component requires that jail officials acted with intent -- that they had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009). Under this requirement, a plaintiff must show that a prison official subjectively knows of an excessive risk of harm to an inmate's health or safety and chooses to disregard that risk. *Farmer*, 511 U.S. at 837; *Wilson*, 501 U.S. at 302–03 (finding that plaintiffs must show that prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm).

    1.    *The Objective Prong*:  Brooks's allegations about the Alleged Conditions do not meet the "extreme deprivation" standard of the Eighth Amendment's objective prong.

Brooks does not allege the Defendants denied Brooks a life necessity, such as food or water, for an unreasonable period of time. Brooks does not demonstrate the origin of the supposed "hair follicles in" his food, and he does not allege that he became sick from eating the food served him in Cell Eight. *See Prophetes v. Gilless*, 869 F. Supp. 537, 538-39 (W.D. Tenn. 1994) (inmate was not subjected to cruel and unusual punishment from *cold food* while confined) (emphasis added).

Brooks does not identify what the temperature was inside Cell Eight on relevant dates. Brooks does not allege facts demonstrating his "neck and back [pains]" from sleeping on the floor were a serious medical need. Brooks does not allege he suffered injury from the backless gown he was issued while in Cell Eight. *See Taylor v. Boyd*, No. 06-2412, at *7-8 (W.D. Tenn. Aug. 15, 2008) ("The Sixth Circuit has held that, in the absence of … a physical injury, *the deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth Amendment* … The fact that Plaintiff *subjectively felt cold* is *insufficient to satisfy the objective component* of an Eighth Amendment violation … [E]ven if Plaintiff's cell were cold, there is *no evidence that any defendant was actually aware of the temperature in his cell* … [There is] *no Eighth Amendment violation* where the Plaintiff was placed in an observation room for suicide watch and was *not allowed clothing except a suicide prevention gown*") (emphasis added) (citing cases).

Brooks does not allege serious risk to his health, or injuries incurred, from the "unsanitized" condition of Cell Eight. *See Bonds v. Lindamood*, No. 16-0085, 2018 WL 817229, at *1 (M.D. Tenn. Jan. 16, 2018) ("[D]irty and *foul smelling cells* for no more than a week *simply do not rise to the level of grave and extreme deprivations*") (emphasis added); *Ishaaq v. Compton*, 900 F. Supp. 935, 943 (W.D. Tenn. 1995) ("To the extent [Plaintiff] alleges that the showers were dirty, he *has not alleged conditions so bad that society chooses not to tolerate them*") (emphasis added).

Brooks's factual allegations about the Alleged Conditions are insufficient to satisfy the objective prong of an Eighth Amendment claim of unconstitutional conditions of confinement.

2.    *The Subjective Prong:*  Brooks does not allege that Ms. Holiday had subjective knowledge of, and disregarded, an excessive risk of harm to Brooks's health or safety while confined in Cell Eight. There is nothing in the record from which the Court can infer that Ms. Holiday displayed deliberate indifference to a substantial risk that Brooks would suffer serious

harm from the Alleged Conditions.

For example, Brooks alleges that "inmates with positive Covid-19 w[ere] housed in the same unit on quarantine." (ECF No. 1 at PageID 4.)  Brooks alleges he was "in the same unit" as Covid-positive inmates, but he does not describe the risk of harm posed to him from that housing arrangement.  The complaint does not describe where Cell Eight was located in relation to Covid-positive inmates' cells.  (*See id*.)  Brooks does not allege facts demonstrating that Ms. Holiday "responded unreasonably to [a] risk" that Brooks would catch Covid-19 from coronavirus-positive inmates.  *See Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020).

Brooks's factual allegations about the Alleged Conditions are insufficient to satisfy the subjective prong of an Eighth Amendment claim of unconstitutional conditions of confinement

For these reasons, Brooks's conditions-of-confinement claim against Ms. Holiday in her individual capacity is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

### H.  Retaliation Claim Against Blair In His Individual Capacity

Blair allegedly told Brooks that Blair had "pressed [assault] charges on [Brooks] [the "Charges"] to intimidate me." (ECF No. 1 at PageID 5.)  The disciplinary hearing on the Charges occurred on October 11, 2021.  (*Id*.)  Brooks lost thirty (30) days of good-time credit and was placed in isolation for thirty (30) days.  (*Id*.)  The Court construes Brooks's allegations as a claim of retaliation.

The Court reviews Brooks's retaliation claim under the First Amendment.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) ("Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution").  A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X*, 175 F.3d at 394.   "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in . . . civil rights claims." *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus-X*, 175 F.3d at 391.   Filing a prison grievance also is protected conduct.   *Hill*, 630 F.3d at 472.   "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct."   *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).   "Temporal proximity can provide circumstantial evidence of retaliatory motive."   *Walton v. Gray*, 695 F. App'x 144, 146 (6th Cir. 2017) (citing *Hill*, 630 F.3d at 475-76).

Brooks does not allege that Blair said anything about Brooks's September 25, 2021 grievance for "staff misconduct."   (*See* ECF No. 1 at PageID 5 (the "Grievance").)   The complaint is silent about the date Blair filed the Charges.   The complaint alleges no facts affording a plausible inference of temporal proximity between (1) Blair's filing of the Charges and (2) Brooks's filing of the Grievance from which to infer that Blair had a retaliatory motive.

Brooks's retaliation claim against Blair in his individual capacity is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

### I.   Claim Of Failure To Protect

Brooks alleges that he did not have "officers check[ing] on me [in Cell Eight] to make sure I was alive" (the alleged "Failure To Check") (ECF No. 1 at PageID 4.)   Brooks (1) does not claim that he suffered an injury from the Failure To Check; (2) does not describe the reason SCCJC officers should have checked on him; and (3) does not identify particular SCCJC officers who should have checked on him.   The Court construes Brooks's allegation as a claim of failure to protect.   As noted *supra*, it is unclear from the record whether Brooks was a convicted inmate or a pretrial detainee on dates relevant to Brooks's claims in the complaint.   The Court considers

Brooks's failure-to-protect claim under (1) the Eighth Amendment's standard applicable to convicted inmates and (2) the Fourteenth Amendment's standard applicable to detainees.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of ... inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). A prison official is liable under the Eighth Amendment for failure to protect an inmate when: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's safety. *Farmer*, 511 U.S. at 834. For the objective prong, a plaintiff must demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer*, 511 U.S. at 833). For the subjective prong, a plaintiff must show that a prison official "kn[ew] of and disregard[ed]" that risk. *Farmer*, 511 U.S. at 837); *see also Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).

 Pretrial detainees may sue jail officials for failing to prevent harm under the Fourteenth Amendment's objective standard. *See Westmoreland v. Butler Cnty., Ky.*, 29 F.4th 721, 728 (6th Cir. 2022). To state a failure-to-protect claim, a pretrial detainee must allege that an official acted in a manner that: (1) was intentional; (2) put the plaintiff at substantial risk of serious harm; (3) failed to take reasonable steps to abate that risk; and (4) actually caused the plaintiff's injuries. *Id.* at 729–30. "[The Sixth] Circuit has now explicitly taken the position that a failure-to-protect claim by a pretrial detainee requires only an objective showing that an individual defendant acted (or failed to act) deliberately and recklessly." *Id.* (citing *Brawner v. Scott Cnty., Tenn.*, 14 F.4th 585, 596 (6th Cir. 2021)).

Even under the more liberal standard of the Fourteenth Amendment, Brooks insufficiently alleges a claim of failure to protect. Brooks's generalized allegation that "the officers would not check on me," *see* ECF No. 1 at PageID 4, does not adequately allege facts demonstrating a "sufficiently serious" condition. *See Farmer*, 511 U.S. at 834. Brooks does not allege adequate

facts to support plausible inference that one or more of the Defendants (1) subjectively knew that Brooks might harm himself in Cell Eight; and (2) disregarded that risk.

Brooks's claim of failure to protect is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

## IV.     <u>AMENDMENT UNDER THE PLRA</u>

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA.  *Lucas v. Chalk*, 785 F. App'x 288, 291 (6th Cir. 2019) (citing *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[W]e hold, like every other circuit to have reached the issue, that under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA")); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded").  Leave to amend is not required where a deficiency cannot be cured.  *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed.  If it is crystal clear that ... amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that *sua sponte* dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts").

The Court grants leave to amend the complaint under the conditions set forth below.

## V.     <u>CONCLUSION</u>

For the reasons set forth above:

A.      The complaint's claims of (1) deprivation of medical care and mental health care; (2) denial of access to the courts; (3) transfer to another correctional facility; (4) verbal harassment;

(5) unconstitutional conditions of confinement; (6) retaliation; and (7) failure to protect (collectively, the "Dismissed Claims") (ECF No. 1) are DISMISSED WITHOUT PREJUDICE in their entirety for failure to state a claim on which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1)-(2);

B.      Leave to amend the Dismissed Claims is GRANTED.  Amended claims must be filed within twenty-one (21) days after the date of this order.  An amended pleading must comply with the Federal Rules of Civil Procedure, including but not limited to Rule 8's requirement of a short and plain statement of Brooks's claims.  An amended complaint supersedes the original complaint and must be complete in itself without reference to the prior pleadings.  Brooks must sign the amended complaint, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document.  Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint.  All claims alleged in an amended complaint must arise from the facts alleged in the original complaint.  Each claim for relief must be stated in a separate count and must identify each Defendant sued on that count.  If Brooks fails to file an amended complaint within the time specified, the Court will dismiss the Dismissed Claims with prejudice and enter judgment as to the Dismissed Claims.  The Court recommends that any such dismissal should be treated as a strike pursuant to 28 U.S.C. § 1915(g). *See Simons v. Washington*, No. 20-1406, 2021 WL 1727619, at *1 (6th Cir. May 3, 2021); and

C.      The complaint's claim of excessive force against Blair and Smith in their individual capacities (ECF No. 1) SHALL PROCEED.  The Clerk is ORDERED to issue process for Defendants Blair and Smith and to deliver that process to the U.S. Marshal for service.  Service shall be made on Blair and Smith pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10) by registered or certified mail or personally if mail

service is not effective.  All costs of service shall be advanced by the United States.  It is further ORDERED that Brooks shall serve a copy of every subsequent document he files in this case on the attorneys for Blair and Smith, or on those Defendants personally if they are unrepresented. Brooks shall make a certificate of service on every document he files.  Brooks shall familiarize himself with the Federal Rules of Civil Procedure and this Court's Local Rules.[3]  Brooks is reminded that he must promptly notify the Clerk, in writing, of any change of address or extended absence.  Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of this case without further notice.

IT IS SO ORDERED, this 15th day of September, 2022.


/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

---

[3]  A copy of the Local Rules may be obtained from the Clerk or on the Court's website at https://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.