# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| UNIQUE BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:21-cv-2701-SHM-tmp |
| | ) | |
| C. BLAIR, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

**ORDER SCREENING AMENDED COMPLAINT (ECF NO. 11) UNDER THE PLRA, DISMISSING CERTAIN AMENDED CLAIMS, PROCEEDING BROOKS'S FIRST AMENDMENT RETALIATION CLAIM, DISMISSING CERTAIN DEFENDANTS, DENYING INJUNCTIVE RELIEF, DIRECTING CLERK TO MODIFY DOCKET, AND DIRECTING DEFENDANTS BLAIR & SMITH TO SUPPLEMENT ANSWER**

---

On October 19, 2022, the Court received a document from Plaintiff Unique Brooks entitled "Amended Complaints Dismissed without prejudice." ("Amended Complaint," ECF No. 11). The Amended Complaint is before the Court for screening pursuant to the Prison Litigation Reform Act, 28 U.S.C. §§ 1915, *et seq*. (the "PLRA").

## I.    <u>LEGAL STANDARD</u>

The Court must screen prisoner complaints and dismiss any complaint, or any portion of it, if the complaint —

    (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

    (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009), and in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).  Under those standards, the Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681).  The Court does not assume that conclusory allegations are true, because they are not "factual," and all legal conclusions in a complaint "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.  Federal Rule of Civil Procedure 8 provides guidance on this issue.  Although Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," it also requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

Courts screening cases accord more deference to *pro se* complaints than to those drafted by lawyers.  "*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).  *Pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

## II.    <u>REQUIREMENTS TO STATE A CLAIM UNDER § 1983</u>

Brooks sues under 42 U.S.C. § 1983.  (*See* ECF No. 1 at PageID 1.)  To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States, and (2) that a defendant caused harm while acting under color of state law.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970).

## III.    <u>BACKGROUND</u>

On November 8, 2021, Brooks, then a federal pretrial detainee[1] incarcerated at the Shelby County Division of Corrections (the "SCDC") in Memphis, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*.  (ECF Nos. 1 & 2; *see* ECF No. 11 at PageID 56.)  On November 9, 2021, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the PLRA.  (ECF No. 4.)

The Complaint asserted claims of: (1) excessive force; (2) deprivation of medical care and mental health care; (3) denial of access to the courts; (4) transfer to another correctional facility; (5) verbal harassment; (6) unconstitutional conditions of confinement; (7) retaliation; and (8) failure to protect.  (ECF No. 1 at PageID 3-5.)  Brooks sued Defendants: (1) Correctional Officer C. Blair; (2) Correctional Officer T. Smith; (3) Correctional Officer T. Lowery; (4) the SCDC; (5)

---

[1] Brooks was indicted on three counts of knowingly possessing a firearm also known as a "Molotov Cocktail."  (*See United States v. Brooks*, Cr. No. 21-20159, ECF No. 2.)  For much of the criminal case, Brooks appeared *pro se* with Tyrone Paylor or Michael Stengel as elbow counsel.  (*See id.*; ECF Nos. 63, 69, 78, 84, 88, 92, 97, 99, 101.)  A jury found Brooks guilty on Counts 1 and 2 and not guilty on Count 3.  (*See id.*, ECF Nos. 101 & 106.)  On November 8, 2022, the Court sentenced Brooks to two concurrent 60-month sentences, to be followed by three years on supervised release.  (*Id.*, ECF No. 154.)

Shelby County, Tennessee; (6) SCDC Nurse[2]; and (7) Ms. Holiday in the SCDC's Mental Health Department.  (ECF No. 1 at PageID 1-2; *see* ECF No. 7 at PageID 26-27, 29.)

On September 15, 2022, the Court screened the Complaint and entered an order partially dismissing the Complaint, granting leave to amend the claims dismissed without prejudice (the "Dismissed Claims"), and proceeding Brooks's excessive force claim (*see* ECF No. 1 at PageID 3) against Blair and Smith in their individual capacities.  ("Screening Order," ECF No. 7.)  The "Dismissed Claims" are: (1) deprivation of medical care and mental health care; (2) denial of access to the courts; (3) transfer to another correctional facility; (4) verbal harassment; (5) unconstitutional conditions of confinement; (6) retaliation; and (7) failure to protect.  (*Id.* at PageID 45-46.)

Brooks was granted leave to file an amended pleading within twenty-one (21) days of the Screening Order and ordered to comply with the Federal Rules of Civil Procedure including Rule 8's requirement of a short and plain statement of Brooks's claims.  (*Id.*)  The Court warned Brooks that

> An amended complaint supersedes the original complaint and must be complete in itself without reference to the prior pleadings.  Brooks must sign the amended complaint, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document.  Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint.  All claims alleged in an amended complaint must arise from the facts alleged in the original complaint.  Each claim for relief must be stated in a separate count and must identify each Defendant sued on that count.  If Brooks fails to file an amended complaint within the time specified, the Court will dismiss the Dismissed Claims with prejudice and enter judgment as to the Dismissed Claims.

---

[2] The Clerk is **DIRECTED** to modify the docket to name Defendants as "SCDC Nurse", instead of "SCCJC Nurse", and Ms. Holiday at the "SCDC's Mental Health Department."  Brooks was housed at the SCDC, not the Shelby County Criminal Justice Center, and alleges incidents that occurred in the SCDC.

(ECF No. 7 at PageID 46.)

The Court ordered the Clerk to issue process for Blair and Smith. (*Id.* at PageID 46-47.) On October 7, 2022, the U.S. Marshal served Blair and Smith. (ECF No. 9 at PageID 52-53; *see* ECF No. 10 at PageID 54-55.) On November 10, 2022, Blair and Smith filed an Answer to the Amended Complaint. (ECF No. 14.) The Answer to the Amended Complaint addresses the Dismissed Claims. The Answer does not address the excessive force claim in the Complaint that the Court proceeded against Blair and Smith.

## IV.    **THE AMENDED COMPLAINT**

The Amended Complaint was dated October 7, 2022, and received at the Court on October 19, 2022. (ECF No. 11 at PageID 62; *see* ECF No. 11-2 at PageID 76.)[3] The Amended Complaint is handwritten and not on the Court's form for § 1983 complaints. (*See* ECF No. 11.) Brooks does not list the Defendants who are parties to the suit or the capacity in which they are being sued except to the extent he identifies a party in his allegations. (*Id.*) Brooks does not specify the relief he seeks on the amended claims. (*Id.*)

Brooks alleges the following amended claims: (1) failure to train corrections staff; (2) denial of medical and mental health care; (3) denial of access to the courts; (4) transfer to a different prison; (5) verbal harassment; (6) unconstitutional conditions of confinement; (7) retaliation; and (8) failure to protect. (*Id.* at PageID 56-62.)

---

[3] Brooks states in a Certificate of Service that "a[n] original document has been forwarded via U.S. Postal Service on 10/7/2022 [t]o be served in District Court to the appropriate parties." (ECF No. 11 at PageID 62-63.) The deadline for filing an amended complaint was Thursday, October 6, 2022. Although it appears that the Amended Complaint may not be timely, the Court will proceed with screening.

## V.    ANALYSIS

### A.  The SCDC, Shelby County, Official Capacity Claims & Failure to Train

To the extent Brooks alleges claims against the SCDC, the Court construes those claims as claims against Shelby County because governmental departments and divisions are not suable entities. *See generally Hafer v. Melo*, 502 U.S. 21 (1991). To the extent Brooks sues Blair, Smith, Lowery, the SCDC Nurse, and Holiday in their official capacities, those claims are construed as claims against the Defendants' employer, Shelby County. *See Jones v. Union Cnty., Tenn.*, 296 F.3d 417, 421 (6th Cir. 2002) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)). To hold Shelby County liable under § 1983, Brooks must prove that the alleged violations arose from one of Shelby County's policies or customs. *See Coleman v. Hamilton Cnty. Bd. of Cnty. Commissioners*, 130 F.4th 593, 599 (6th Cir. 2025).

In Count 3(b) alleging denial of access to the courts, Brooks refers to a policy that prevented access to his thumb drive. In Count 8 alleging failure to protect, Brook alleges that he does not know SCDC policy about suicide prevention, but that it should include checking on a suicidal inmate. (*See* ECF No. 11 at PageID 58, 62.) Mere reference without factual specificity to the existence of a policy is not sufficient to state a claim of municipal liability. *See* Fed. R. Civ. P. 8. Brooks fails to state claim to relief for denial of access to the courts and for failure to protect against Shelby County, the SCDC, and Blair, Smith, Lowery, the SCDC Nurse, and Holiday in their official capacity.

In Count One of the Amended Complaint, Brooks alleges that Shelby County should be liable for failure to train its correctional staff about dealing with federal pretrial detainees. (ECF No. 11 at PageID 56.) He alleges that "the injuries I have accumulated were sustained pursuant to the custom and policies dealing with state inmates that have been convicted" and that he has been

deprived of his Fourteenth Amendment rights by "the repeated excessive force by the correction officers at the SCDC facility." (*Id.*) Brooks alleges that officers "have not been adequately trained to deal with Federal Pretrial detainees." (*Id.*)

A prisoner may allege a policy or custom by alleging that the county's training policies failed to adequately teach corrections officers about how to avoid the unconstitutional failure to protect inmates. *See Coleman*, 130 F.4th at 600; *see Burgess v. Fischer*, 735 F.3d. 462, 478 (6th Cir. 2013) (a plaintiff may establish a claim against a political subdivision by showing a policy of inadequate training). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Berry v. Delaware Cnty. Sheriff's Off.*, 796 F. App'x 857, 861 (6th Cir. 2019) (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). The failure to train must rise to the level of "deliberate indifference" to constitute a policy or custom actionable under § 1983." *Connick*, 563 U.S. at 61 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). To substantiate Brooks's failure to train claim, he must prove three elements: "(1) that a training program is inadequate to the tasks the officers must perform; (2) that the inadequacy is the result of the [official's] deliberate indifference; and (3) that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Harvey v. Campbell Cnty., Tenn.*, 453 F. App'x 557, 562 (6th Cir. 2011); *see also Winkler v. Madison Cnty.*, 893 F.3d 877, 902 (6th Cir. 2018) (same).

Brooks must allege that the training program is inadequate. Failure-to-train liability depends on the substance of the training. *Howell v. NaphCare, Inc.*, 67 F.4th 302, 320 (6th Cir. 2023). Brooks does not allege any facts about the training of Shelby County corrections officers other than that it was not appropriate or adequate. (*See* ECF No. 11 at PageID 56.) Brooks's conclusory allegations are insufficient. *See Iqbal*, 556 U.S. at 679; *see Grote v. Kenton Cnty., Kentucky*, 85 F.4th 397, 415 (6th Cir. 2023) (denying relief against the county when plaintiff does

not explain how the officers' training was deficient or how such training would have made the possibility for a constitutional violation obvious). Because Brooks alleges no facts about the training program, he cannot satisfy the third prong by showing that inadequacies in training caused his injury.

In the Court's September 15, 2022 order, Brooks was advised of the elements required to allege municipal liability against Shelby County and to allege official capacity claims. (ECF No. 7 at PageID 29.) He was given the opportunity to amend and instructed to comply with the pleading requirements of Fed. R. Civ. P. 8. (*Id.* at PageID 46.)

In the Amended Complaint, Brooks fails to allege a policy or custom of Shelby County or establish failure to train sufficiently to impose municipal liability against Shelby County. Because of the total factual failure of the Amended Complaint, Brooks's claims against (1) Shelby County; (2) the SCDC; and (3) Blair, Smith, Lowery, the SCDC Nurse, and Holiday in their official capacities are **DISMISSED WITH PREJUDICE** for failure to state a claim to relief.[4]

### B. <u>Denial Of Medical Care & Mental Health Care</u>

Under the Fourteenth Amendment, pretrial detainees have an established right to medical care "analogous to the right of prisoners under the Eighth Amendment." *Hodges v. Abram*, 138 F.4th 980, 987–88 (6th Cir. 2025) (quoting *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009)). An officer violates that right if the officer shows "deliberate indifference to a pretrial detainee's serious medical needs." *Id.* at 987. Deliberate indifference has objective and subjective prongs. *Id.*

---

[4] Dismissal with prejudice of amended claims that fail to comply with pleading requirements is a proper sanction where a court has identified specific problems to correct in the original complaint, granted the plaintiff leave to amend, and warned of the possibility of dismissal for failure to comply. *See Kensu v. Corizon, Inc.*, 5 F.4th 646, 653 (6th Cir. 2021). The court need not have "infinite patience" with persistent or vexatious refusal to follow the rules. (*Id.*)

To satisfy the objective prong, the plaintiff must show that the medical need was "sufficiently serious." *Id.* "[O]bviousness" is key to this determination. *See Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897–99 (6th Cir. 2004). An injury or illness is "obvious" when "even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 897 (quoting *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990)). A life-threatening condition such as a gunshot wound or a person with "external signs of internal distress" may present as an obvious serious medical need. *Hodges*, 138 F.4th at 988. If a medical need is not obvious, it must have been "diagnosed by a physician as mandating treatment" and be proven with "verifying medical evidence." *Id.* (citing *Blackmore*, 390 F.3d at 897). The Sixth Circuit "has held that a medical need was not obvious, and hence not objectively serious, when it was not obvious to trained medical personnel." *Id.*

To satisfy the subjective prong, the plaintiff must prove that the defendants acted with "more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* at 988.

### 1. Medical Care

In Count Two of the Amended Complaint, Brooks alleges that he was denied medical care. (ECF No. 11 at PageID 56.) Brooks alleges that initially he asked for medical assistance for his mental health and for an adverse reaction to his medications. (*Id.*) Brooks alleges that Smith told Brooks that Brooks was refusing housing, assaulted Brooks by punching him in the eye and slamming him into the window headfirst, and then took Brooks to medical where Brooks was denied medical attention for his eye and head. (*Id.*) Brooks alleges that he told the nurse that he might have a concussion and asked repeatedly for a "catscan." (*Id.*)

Addressing the objective prong of his claim, Brooks does not allege that he displayed symptoms of a concussion or eye injury or that he reported symptoms. Brooks alleges no facts to show that he had an obvious serious medical need. *See Wilson v. Jefferson Cnty.*, No. 4:18-CV-1957 CAS, 2019 WL 4860665, at *11 (E.D. Mo. Oct. 2, 2019) (a concussion is not an obvious injury such that a layperson would necessarily recognize the need for immediate medical attention). Brooks does not allege that he had a medical diagnosis or medical evidence of a non-obvious physical injury. Brooks does not satisfy the objective prong of his deprivation-of-medical-care claim because Brooks does not allege facts demonstrating a sufficiently serious medical need. *See Denious v. City of Newton Falls Police Dep't*, No. 4:22-CV-2124, 2024 WL 1209895, at *6 (N.D. Ohio Mar. 19, 2024) (finding no objectively serious medical need where plaintiff did not allege signs or symptoms of a concussion, provide medical evidence, or allege a later diagnosis of concussion). Brooks fails to state a claim to relief for denial of medical care after the alleged assault.

Brooks has alleged failure to provide medical care within the context of his other claims. The Court will briefly address those allegations.

In Count Four, in the context of alleging a claim for transfer to a different prison, Brooks alleges he was refused medical attention and "any test for diseases" when bodily fluids were thrown on him. (ECF No. 11 at PageID 59.) Brooks fails to allege sufficient facts to state a claim to relief. He does not state what bodily fluids were thrown on him, why he felt that he might be infected or subject to disease, whether he experienced any symptoms, or who refused to treat him. Brooks's allegations do not demonstrate an obvious medical need or provide a diagnosis or medical information that would show a non-obvious need. Brooks fails to satisfy the objective prong and fails to state a claim to relief.

In Count Six, Brooks alleges that he was "physically injured" because he did not have a bed for 12 days and that he was not allowed to speak with medical about that issue and not allowed x-rays or a "catscan." (*Id.* at PageID 61.) Brooks does not allege anything about the nature of his injury or who denied him access to medical. Brooks has failed to allege sufficient facts to meet the objective prong of a serious medical need and fails to state a claim to relief.

### 2. Mental Health Care

In Count 2(a), Brooks alleges that on September 25, 2021, he was denied a mental health doctor to address the adverse effects from taking Lexapro and "Visceral"[5] at the same time. (*Id.* at PageID 57.) Brooks alleges that he experienced paranoia and was "afraid for my life." (*Id.*) Brooks alleges that Smith "instead escorted me to solitary confinement while they stripped me and assaulted me, after being placed on suicide watch the same day." (*Id.*) Brooks alleges that he "was never allowed to speak to mental health until the 28th."[6] (*Id.*) Brooks alleges that he told Holiday that his medicines were given at the same time and that, at the West Tennessee Detention Facility in Mason, Brooks had been given the medicines separately. (*Id.*) Brooks alleges that he asked Holiday if the timing of the medicines were why Brooks was feeling paranoid. (*Id.*) Brooks alleges that he was "not Feeling Good and Felt Suicidal." (*Id.*) Brooks alleges that Holiday did not address Brooks's concerns and told him "to sleep on the floor to think about what I did." (*Id.*) Brooks alleges that the medical staff continue to bring both medicines at the same time, but he has decided to not take them at the same time. (*Id.*)

---

[5] Brooks may be referring to Vistaril, a prescription medicine used to treat anxiety and tension. *See* Vistaril Uses, Dosage & Side Effects - Drugs.com (last accessed July 11, 2025); *see* VISTARIL® (hydroxyzine pamoate) Dosage and Administration | Pfizer Medical Information - US (last accessed July 11, 2025).

[6] Brooks alleged in the Complaint that he was on suicide watch from September 25-28, 2021. (ECF No. 1 at PageID 4.)

The failure to provide mental health care may give rise to a constitutional violation. *See*, *e.g.*, *Dulworth v. Lindamood*, No. 1:18-cv-0036, 2018 WL 4467038, at *3 (M.D. Tenn. Sept. 18, 2018) (internal citations omitted). Under federal law, mental-health needs are medical needs for purposes of the Fourteenth Amendment's deliberate-indifference analysis. *See Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (citation omitted); *see J.H. v. Williamson Cnty., Tennessee*, 951 F.3d 709, 723 (6th Cir. 2020).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* A prisoner's difference of opinion about treatment does not rise to the level of a constitutional violation. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976) (plaintiff who was given medical treatment and merely contended that more should be done failed to state a cause of action).

For purposes of screening under the PLRA, the Court construes Brooks's allegations of paranoia and suicidal ideations as a sufficiently serious medical need. (*See* ECF No. 11 at PageID 57.) *See Comstock*, 273 F.3d at 711 (suicidal ideation may be a serious condition); *see Christy v. Lindamood*, No. 1:18-cv-00008, 2018 WL 1907447, at *5 (M.D. Tenn. Apr. 23, 2018) (same).

To satisfy the subjective prong, Brooks must show that Defendants acted with "more than negligence but less than subjective intent—something akin to reckless disregard." *Hodges*, 138 F.4th at 988. Brooks acknowledges that he saw Holiday, but Brooks believes she did not address his mental health concerns adequately. (ECF No. 11 at PageID 57.) Brooks alleges that he

12

continues to receive his medications at the same time, but he now takes them separately. (*Id.*) Brooks's allegations about the inadequacy of Holiday's care constitute a difference of opinion about treatment, which does not rise to the level of a Fourteenth Amendment violation. *See Westlake*, 537 F.2d at 860 n.5; *see Pryor v. Chambers-Smith*, No. 24-3301, 2025 WL 1090997, at *5 (6th Cir. Apr. 2, 2025) (finding no deliberate indifference based on plaintiff's dissatisfaction with the treatment for his purported suicidal tendencies).

Not every unpleasant experience a prisoner might endure while incarcerated rises to the level of a constitutional violation. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam). Although telling an individual "to sleep on the floor to think about what I did" is harsh, *see* ECF No. 11 at PageID 57, Brooks's allegations are insufficient to afford a plausible inference that Holiday and the "medical staff" were deliberately indifferent or acted with reckless disregard to Brooks's mental health care needs. *See Hollyfield v. Hurst*, 796 F. App'x 817, 820 (5th Cir. 2019) (rude or insensitive behavior does not alone rise to the level of deliberate indifference); *see Morgan v. Hiwassee Mental Health*, No. 1:19-cv-22, 2019 WL 3719391, at *3 (E.D. Tenn. Aug. 7, 2019); *see Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 449 (6th Cir. 2014) (finding no deliberate indifference to inmate's mental health needs where he was placed in an "observation cell where he could be closely monitored"). Brooks has failed to sufficiently allege facts that would satisfy the subjective prong of his Fourteenth Amendment claim of denial or delay of mental health care.

When screening the Complaint, the Court advised Brooks of the standard for alleging a claim of deliberate indifference about medical and mental health care and pointed out the reasons the allegations in the Complaint fail to state a claim to relief. (*See* ECF No. 7 at PageID 33-36.) Since learning of Brooks's status as a pretrial detainee, the Court has analyzed the amended claims

13

in the instant order applying the less harsh Fourteenth Amendment standard and has determined that Brooks has again failed to state a claim to relief.

Brooks has twice had the opportunity to allege denial of medical and mental health care. Further amendment would be futile. Brooks's Fourteenth Amendment claims about medical and mental health care are **DISMISSED WITH PREJUDICE** for failure to state a claim to relief.

## C. Denial Of Access To The Courts

In Count 3(a) of the Amended Complaint, Brooks alleges that Blair and Smith denied Brooks access to the courts when he was assigned to Juliet Building, Delta Dorm, for 0700-1900 hours shift. (ECF No. 11 at PageID 57.) Brooks alleges that he was not allowed his mail, which included his "entire case discovery." (*Id.*) Brooks alleges that this information was not available to him for use in the filing of a habeas corpus petition on October 11, 2022.[7] (*Id.*)

In Count 3(b) of the Amended Complaint, Brooks alleges that he "went to trial pro-se" on June 3, 2022, and informed the corrections staff that he needed access to his flash/thumb drives for trial. (*Id.* at PageID 58; *see* Cr. No. 21-20159, ECF No. 97.) Brooks alleges that he filed a grievance a month before trial. (*See* ECF No. 11-1 at PageID 73 (grievance form); ECF No. 11 at PageID 58.) Brooks alleges that he requested the thumb drive on June 3, 6, and 7, 2022, and that Sergeant Felts denied the request due to "the policy of the State facility." (*Id.*) Brooks alleges that the thumb drive had materials that "could have exonerated me." (*Id.*) Brooks alleges that he was

---

[7] Brooks filed a petition pursuant to 28 U.S.C. § 2241 on October 27, 2021, seeking to set aside both his state and federal charges or in the alternative to obtain a new federal detention hearing where his state charges could not be used against him. (*See Brooks v. United States Marshals Service*, No. 2:21-cv-02679, ECF No. 8 at PageID 57.) The Court denied the petition. Brooks had not presented a claim for which the Court could grant habeas relief because his claims were not cognizable in habeas, were moot, or were unexhausted. (*Id.* at PageID 56-58.) To the extent Brooks sought expungement, the Court lacked jurisdiction. (*Id.* at PageID 58-60.)

placed back in "the hole" for "failure to take a drug test" on June 8, 2022, the day after trial, and denied due process. (*Id.*)

In Count 3(c) of the Amended Complaint, Brooks alleges that he was not granted access to the law library because he was sent back to Juliet Building Delta Dorm after receiving a write-up. (*Id.* at PageID 59.) Brooks alleges that he was "let out of FSP[8] after 12 days in J Building Delta", was out one day, and then sent back. (*Id.*) Brooks alleges that Blair and Smith intentionally ignored him when he was on suicide watch at Juliet Building Delta Dorm. (*Id.*; *see* ECF No. 11-1 at PageID 66.)

In the Complaint, Brooks's allegations arose from a grievance filed on September 25, 2021, and legal mail dated September 27, 2021. (*See* ECF No. 1 at PageID 5.) Brooks alleged that he had appeared in court on October 2021, without his legal documents. (*Id.*)

Brooks's amended claims of denial of access to the courts do not arise from the facts alleged in the Complaint, as required by the Court's September 15, 2022 Order. (*See* ECF No. 7 at PageID 46.) The amended claims describe incidents occurring in June and October 2022, after the Complaint was filed. Brooks's amended claims are dismissed for failure to comply with the Court's September 15, 2022 order. For the reasons stated below, Brook's claims are also dismissed for failure to state a claim to relief on his amended claims of denial of access to the courts.

Prisoners have a well-established constitutional right of access to the courts, *see Lewis v. Casey*, 518 U.S. 343, 350 (1996), which "extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). To have standing to pursue a First Amendment claim for denial of access to the courts, "a prisoner

---

[8] "FSP" appears to relate to special housing for suicide prevention. (*See* ECF No. 11 at PageID 61.)

must show prison officials' conduct inflicted an 'actual injury,' *i.e.*, that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see Thaddeus-X*, 175 F.3d at 394. For example, a prisoner must show that alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. *Lewis*, 518 U.S. at 351. This claim has four elements: (1) a non-frivolous underlying claim; (2) obstructive actions by state actors; (3) substantial prejudice to the underlying claim that cannot be remedied by the court; and (4) a request for relief which is now otherwise unattainable. *See Jackson v. City of Cleveland*, 64 F.4th 736, 746 (6th Cir. 2023).

In Counts 3(a) and 3(c), Brooks does not allege that he was unable to pursue a nonfrivolous legal claim because he was denied his mail, which included discovery information, or because he was denied access to the law library. (*See* ECF No. 11 at PageID 57, 59.)

In Count 3(b), Brooks alleges that he would have been exonerated in his criminal case if he had his thumb drive. (*Id.* at PageID 58.) Brooks refers to a policy preventing him from having the thumb drive, but he does not state what that policy is. Although he alleges an injury, Brooks does not allege what information on the thumb drive would have allowed him to pursue a nonfrivolous legal argument or the nature of that argument. *See Segura v. Ahlin*, No. 1:18-cv-00052-LJO-SAB(PC), 2018 WL 1959538, at *13 (E.D. Cal. Apr. 25, 2018) (denial of legal paperwork and research saved on electronic devices without a showing of actual injury fails to state a plausible access to court claim).

Brooks's amended claims do not arise from the facts alleged in the Complaint, as required by the Court's September 15, 2022 order. (ECF No. 7 at PageID 46.) Brooks seeks relief based on facts that occurred after he filed the original Complaint. To the extent he alleges new claims, Brooks fails to allege facts addressing the first, third and fourth elements of an access to courts

claim. Brooks has twice had the opportunity to allege denial of access to the courts. Further amendment would be futile.

Brooks's First Amendment claims of denial of access to the courts are **DISMISSED WITH PREJUDICE** for failure to state a claim to relief.

### D. <u>Transfer to A Different Prison</u>

In Count Four of the Amended Complaint, Brooks alleges that he "expressed . . . in a grievance that I am in fear for my life against the corrections staff specifically T. Smith, Blair and other corrections staff." (ECF No. 11 at PageID 59; *see* ECF No. 11-1 at PageID 74 (grievance).) Brooks alleges that he was receiving threats from Vice Lord gang affiliates in Juliet Building Delta Dorm. (ECF No. 11 at PageID 59.) Brooks alleges that bodily fluids were thrown on him and that he was refused medical attention and "any test for diseases." (*Id.*) Brooks alleges that he was released into population and escorted by Smith. (*Id.*) Brooks alleges he told Smith that Brooks did not feel safe and that "my life may be in danger but it was not taken seriously." (*Id.*) Brooks alleges that he was jumped by gang affiliates on October 6, 2022, and sent back to Juliet Building. (*Id.*)

Brooks alleges that on June 4, 2022, one day after his criminal trial, Smith put Brooks in a dorm in India Building with high classification inmates although Brooks has a low classification. (*Id.*) Brooks alleges that Smith housed Brooks "purposely" with the inmate who threw bodily fluids on Brooks and attempted to get Brooks jumped by Vice Lord gang affiliates. (*Id.* at PageID 60.) Brooks alleges that he informed "the officer" of the issue, that Brooks was a *pro se* defendant, that he was currently in trial, and that he was in fear for his life. (*Id.*) Brooks alleges that he was charged with refusing housing. (*Id.*; *see* ECF No. 11-1 at PageID 69.) Brooks sought monetary

damages and "[h]ousing in another facility while [his] Civil Action is pending to ensure my health and safety." (*See* ECF No. 1 at PageID 7.)

To the extent that Brooks alleges incidents in June and October 2022, the amended claims do not arise from the Complaint filed in November 2021, and do not comply with the Court's September 15, 2022 Order.

Prisoners do not have a constitutional right to be assigned to a particular prison, security classification, or housing assignment. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Montanye v. Haymes*, 427 U.S. 236, 243 (1976); *Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008). Because there is no constitutional violation, Brooks fails to state a claim to relief under § 1983.

Brooks's claim for transfer to a different prison is **DISMISSED WITH PREJUDICE** for failure to state a claim to relief. To the extent Brooks seeks injunctive relief in the form of a transfer, that request is **DENIED** as moot because he is no longer incarcerated at the SCDC. *See Henderson v. Martin*, 73 F. App'x 115, 117, 2003 WL 21801442, at *3 (6th Cir. Aug. 4, 2003).

### E.  Verbal Harassment

In Count Five of the Amended Complaint, Brooks alleges that "with all of the exhibits [a]ttached and the clear pattern of verbal and physical [a]buse and denial of Due Process by the officer or SCDC are cruel and unusual punishment when reviewed as a whole." (ECF No. 11 at PageID 60.) District courts "have no obligation to act as counsel or paralegal" to *pro se* litigants. *Pliler v. Ford*, 542 U.S. 225, 231 (2004). District courts are not "required to create" a *pro se* litigant's claim for him. *Payne v. Sec'y of Treasury*, 73 F. App'x 836, 837 (6th Cir. 2003). Brooks fails to satisfy the pleading requirements to state a claim.

Verbal abuse or harassment at the hands of prison officials does not constitute a constitutional violation. *See*, *e.g.*, *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that even harassment that constitutes "shameful and utterly unprofessional behavior" is insufficient to constitute cruel and unusual punishment). Brooks's verbal harassment claim is **DISMISSED WITH PREJUDICE** for failure to state a claim to relief under § 1983.

### F.  <u>Unconstitutional Conditions of Confinement</u>

In Count Six of the Amended Complaint, Brooks alleges that, after his mental health appointment, he was sent back to Cell Eight, the same cell he had been in since September 25, 2021. (ECF No. 11 at PageID 60.) Brooks alleges that Smith and Blair served him cold food that had hair in it. (*Id.*)

Brooks alleges that he explained to Holiday that he had not been convicted of a crime, was not suicidal, and that the effects from the medication had worn off. (*Id.*) Brooks alleges that Holiday told Brooks to "[g]o back to your cell[,] sleep on the floor and think about what you did." (*Id.* at PageID 60.)

Brooks alleges that Smith "intended to give me cold food, and place hair in my food" and that Holiday "did not care about my mental [h]ealth and was purposely punishing me over medication that was giv[en] to me by the staff improperly." (*Id.* at PageID 60.) Brooks alleges that he did not eat the food or drink the beverages Blair or Smith gave Brooks. (*Id.* at PageID 61.)

Brooks again alleges that he was not allowed to speak with medical and was not allowed x-rays or a "catscan." (*Id.* at PageID 61.) Brooks alleges that he was "physically injured" because he did not have a bed for 12 days. (*Id.*)

Brooks alleges that inmates with COVID-19 were housed in Juliet Building Charlie Dorm and that "we were being fed off the same cart." (*Id.*) Brooks alleges that the officers and state

inmate workers would pass trays back and forth through the slots and that garbage, tissues, and "bodily fluids" would be on the trays.  (*Id.*)  Brooks alleges that he was placed in a cell where an inmate infected with COVID has been housed and that the cell was not sanitized before Brooks moved in.  (*Id.*)  Brooks alleges that Holiday and "the other staff" were aware that Juliet Building Charlie Dorm was being used for quarantine.  (*Id.*)  Brooks alleges that there were no specific cells for quarantine, restricted housing, or suicide prevention and that those policies were "just being implemented."  (*Id.*)

The Fourteenth Amendment applies to Brooks's conditions of confinement claim.  *See Westmoreland v. Butler Cnty., Kentucky*, 29 F.4th 721, 727 (6th Cir. 2022).  To satisfy the objective prong, a plaintiff must show "that he is incarcerated under conditions posing a substantial risk of serious harm."  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the subjective prong, a plaintiff must show something akin to reckless disregard.  *See Hodges*, 138 F.4th at 988. "Extreme deprivations are required to make out a conditions-of-confinement claim."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Addressing the objective prong, many of Brooks's allegations do not allege a serious risk of serious harm or the type of extreme deprivation that rises to the level of a constitutional violation.  Cold food is an incident of prison life that does not rise to the level of a constitutional violation.  *See Thaddeus-X*, 175 F.3d at 404; *see Butler v. Jewell*, 869 F.2d 1488 (6th Cir. 1989) (finding no due process violation for cold food).  Having to sleep on the floor does not violate the Constitution.  *See Silverburg v. Haney*, No. 19-6273, 2020 WL 6580034, at *3 (6th Cir. July 29, 2020) (citing *Hubbard v. Taylor*, 538 F.3d 229, 235 (3d Cir. 2008)); *see Grissom v. Davis*, 55 F. App'x 756, 757-58 (6th Cir. 2003) (plaintiff was not deprived of her basic human need by a mattress restriction).  The unsanitized nature of the cell alone does not rise to the level of a

constitutional deprivation. *See Bonds v. Lindamood*, No. 1:16-0085, 2018 WL 817229, at *1 (M.D. Tenn. Jan. 16, 2018) ("[D]irty and *foul smelling cells* for no more than a week *simply do not rise to the level of grave and extreme deprivations*") (emphasis added); *Ishaaq v. Compton*, 900 F. Supp. 935, 943 (W.D. Tenn. 1995) ("To the extent [Plaintiff] alleges that the showers were dirty, he *has not alleged conditions so bad that society chooses not to tolerate them*") (emphasis added).

Brooks alleges that Smith and Blair *intended* to place hair in his food and that Brooks did not eat or drink the food. (ECF No. 1 at PageID 60-61.) Brooks does not allege that Smith and Blair actually placed hair in his food or that he became sick or was otherwise harmed. Brooks fails to allege that a state actor caused him serious harm, rising to the level of a constitutional deprivation, in violation of § 1983.

Brooks has failed to allege facts that would satisfy the objective prong of this Fourteenth Amendment conditions of confinement claims addressing food, sleeping on the floor, and the unsanitized nature of his cell.

Brooks claims that Cell Eight was located near the COVID quarantine area (*see* ECF No. 11 at PageID 60-61). No one questions that COVID presented a substantial risk of serious harm. *See Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (finding that objective prong of an Eighth Amendment claim based on exposure to COVID was easily satisfied). Addressing the subjective prong, Brooks does not allege facts showing that Defendants acted with reckless disregard for his health. Brooks admits that he was in Juliet Building Delta Dorm, which was near, but separate from, Juliet Building Charlie Dorm, where the quarantined inmates were housed. (*See* ECF No. 11 at PageID 61.) Brooks does not allege facts demonstrating that the Defendants responded unreasonably or with deliberate indifference to a risk that Brooks would catch COVID.

21

*See Wilson*, 961 F.3d at 840.  Brooks does not allege that any named Defendant was aware that the cell had not been sanitized before Brooks's arrival or that potentially contaminated materials were passing between the cells.  Brooks does not allege that he contracted COVID as a result of his alleged exposure and has not shown that he was harmed.  *See Clifton v. Burgess*, No. 1:22-CV-552, 2022 WL 4363905, at *7 (W.D. Mich. Sept. 21, 2022) ("The Court is sympathetic to the challenges that Plaintiff and other prisoners have faced while incarcerated during the COVID-19 pandemic.  However, Plaintiff must plead enough factual content to permit the Court to draw a reasonable inference.").  Brooks fails to state a claim to relief under § 1983 for based on being housed near quarantined inmates.

When screening the Complaint, the Court stated the law about a conditions of confinement claim and identified the deficiencies in the Complaint's allegations.  (*See* ECF No. 7 at PageID 38-42.)  Brooks's conditions of confinement claims in the Amended Complaint also fail to state a claim to relief.  Further amendment would be futile.  Brooks's conditions-of-confinement claims are **DISMISSED WITH PREJUDICE** for failure to state a claim to relief.

### G.  Retaliation

In Count Seven of the Amended Complaint, Brooks alleges that, on being rehoused from "FSP", he was placed back in Juliet Building for 30 days for assault on staff.  (ECF No. 11 at PageID 61.)  Brooks alleges that Blair told Brooks that he should not file grievances or a lawsuit because Blair did not file charges against Brooks.  (*Id.*)  Brooks alleges that he was removed from FSP on October 6, 2021, and that Blair served Brooks with discipline on October 7, 2021.  (*Id.*; *see* ECF No. 11-1 at PageID 64.)  Brooks alleges that Blair said that he would file charges if Brooks did.  (ECF No. 11 at PageID 61.)  Brooks alleges that Blair attempted to walk away with the appeal form after Brooks signed for his mail.  (*Id.*; *see* ECF No. 11-1 at PageID 70.)

The Court reviews Brooks's retaliation claim under the First Amendment.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) ("Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution.").  A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X*, 175 F.3d at 394.  "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in . . . civil rights claims." *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus-X*, 175 F.3d at 391.  "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct."  *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Brooks has a right to file his lawsuit, and retaliation against Brooks for filing it would constitute a constitutional violation.  *See Hill*, 630 F.3d at 473; *Thaddeus-X*, 175 F.3d at 394.  Filing a grievance also is protected conduct.  *Hill*, 630 F.3d at 472.  Brooks has alleged that he engaged in protected conduct.

Brooks alleges that Blair tried to discourage Brooks from filing a grievance or lawsuit, told Brooks that Blair would press charges if Brooks proceeded, and attempted to leave with Brooks's disciplinary appeal form.  "Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact."  *See Maben v. Thelen*, 887 F.3d 252, 266 (6th Cir. 2018) (citing *Bell*, 308 F.3d at 603).  Some adverse actions are so *de minimis* that they do not rise to the level of a constitutionally cognizable injury.  *Id.* (citing

*Thaddeus-X*, 175 F.3d at 396). "[O]nly de minimis violations should be dismissed as a matter of law; in general, the adverseness question should survive the pleading stage."). *Kennedy v. Bonevelle*, 413 F. App'x 836, 840 (6th Cir. 2011).

The Sixth Circuit has found the confiscation of legal papers is sufficiently adverse. *Maben*, 887 F.3d at 267. However, Brooks does not allege that Blair took the appeal form, but that Blair attempted to walk away with it.

The alleged threat that Blair would file charges against Brooks is sufficient to satisfy the adverse action element of a claim. *See Maben*, 887 F.3d at 266 ("When deciding whether the issuance of a misconduct ticket rises to the level of an adverse action, we look to both the punishment [the inmate] could have faced and the punishment he ultimately did face.").

Brooks alleges that, when this incident occurred, Blair was serving Brooks with the disciplinary response and specifically mentioned a lawsuit and grievances. That addresses the third element of causation, retaliatory motive and temporal proximity. "Temporal proximity can provide circumstantial evidence of retaliatory motive." *Walton v. Gray*, 695 F. App'x 144, 146 (6th Cir. 2017) (citing *Hill*, 630 F.3d at 475-76); *see King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (noting that "temporal proximity between protected conduct and retaliatory acts" when close enough may "creat[e] an inference of retaliatory motive"); *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (same).

For these reasons, Brooks's factual allegations are sufficient to state a claim to relief. Brooks's First Amendment retaliation claim shall proceed against Blair in his individual capacity.

### H.  **Failure to Protect**

In Count Eight of the Amended Complaint, Brooks alleges that, while in FSP, he was not checked on to prevent other suicide attempts. (ECF No. 11 at PageID 62.)  Brooks alleges that he

is unsure of SCDC policy about suicide prevention, but he alleges that an inmate who has had a suicidal incident or claim should be checked on periodically.  (*Id.*)  Brooks alleges that Blair, Smith and the Nurse "intentionally disregarded my request for medical treatment and instead charged me with refusing housing[,] assaulted me, further declined my medical needs . . . exacerbating my adverse reaction to the medication causing me extreme emotional harm and causing me suicidal thoughts." (*Id.*)  Brooks alleges that he was denied protection because he was not being monitored by the officers in Juliet Building and that "this was an already established policy." (*Id.*)

Pretrial detainees may sue jail officials for failing to prevent harm under the Fourteenth Amendment's objective standard.  *See Westmoreland*, 29 F.4th at 728.  To state a failure-to-protect claim, a pretrial detainee must allege that an official acted with deliberate indifference in a manner that: (1) was intentional; (2) put the plaintiff at substantial risk of serious harm; (3) failed to take reasonable steps to abate that risk; and (4) actually caused the plaintiff's injuries.  *Id.* at 729–30.

When screening the Complaint, the Court stated the standard for a failure to protect claim and said that Brooks failed to allege: (1) an injury, (2) the officers who should have checked on him, and (3) the reasons that officers should have checked on him.  (ECF No. 7 at PageID 43-45.)  In the Amended Complaint, Brooks again makes no factual allegations that he was injured from the alleged failure to check on him while in FSP and, at a minimum, fails to satisfy the fourth element of the claim.  Brooks has failed to state a claim to relief under § 1983.  *See Adickes*, 398 U.S. at 150.

Brooks has twice had the opportunity to address failure to protect.  Further amendment would be futile.  Brooks's claim of failure to protect is **DISMISSED WITH PREJUDICE** for failure to state a claim to relief.

VI.    **CONCLUSION**

For the reasons set forth above:

(1)    Brooks's claims against (1) Shelby County; (2) the SCDC; and (3) Blair, Smith, Lowery, the SCDC Nurse, and Holiday in their official capacities are **DISMISSED WITH PREJUDICE** for failure to state a claim to relief.

(2)    Brooks's Fourteenth Amendment claims about medical and mental health care, failure to protect, and conditions of confinement and First Amendment claims of denial of access to the courts are **DISMISSED WITH PREJUDICE** for failure to state a claim to relief.

(3)    Brooks's claims for transfer to a different prison and verbal harassment are **DISMISSED WITH PREJUDICE** for failure to state a claim to relief under § 1983.

(4)    Brooks's request for injunctive relief in the form of a transfer to a different prison is **DENIED** as moot.

(5)    Brooks's First Amendment retaliation claim against Blair in his individual capacity and Brooks's excessive force claims against Blair and Smith in their individual capacities shall **PROCEED**.

(6)    The Clerk is **DIRECTED** to modify the docket to terminate Shelby County, the SCDC, Lowery, the SCDC Nurse, and Holiday as defendants because there are no surviving claims against them.

(7)    Brooks shall familiarize himself with the Federal Rules of Civil Procedure and this Court's Local Rules.[9]  Brooks is reminded that he must promptly notify the Clerk, in

---

[9]  A copy of the Local Rules may be obtained from the Clerk or on the Court's website at https://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.

writing, of any change of address or extended absence.  Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of this case without further notice.

## VII.    ORDER DIRECTING DEFENDANTS TO SUPPLEMENT ANSWER

Blair and Smith are **DIRECTED** to supplement their answer to address the excessive force claim (*see* ECF No. 1 at PageID 3) and the First Amendment retaliation claim (*see* ECF No. 11 at PageID 61) within twenty-one (21) days of the entry of this Order.

IT IS SO ORDERED this _15th_ day of July, 2025.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE